**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **GENERAL ELECTRIC MEDICAL SYSTEMS EUROPE,** | : : : | **Case No. 1:02cv1844** |
| **Plaintiff,** | : : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : : | |
| **PROMETHEUS HEALTH IMAGING, INC.,** *et al.* | : : : | **ORDER** |
| **Defendants** | : | |

This matter arises on Plaintiff General Electric Medical Systems Europe's ("GEMS") *Renewed Motion for Sanctions and Memorandum in Support* (Doc. 65) ("Motion for Sanctions") against Defendant, Dr. Munir Uwaydah.[1] GEMS argues that Dr. Uwaydah should be sanctioned for his failure to comply with his Rule 26 discovery obligations, and for his refusal to make himself available for deposition. GEMS requests

---

[1] GEMS first sought sanctions on June 23, 2003 (Doc. 42). GEMS later filed its *Motion for Contempt and Renewed Motion for Sanctions* (Doc. 53) on November 11, 2003 against Defendants, Dr. Uwaydah and Prometheus Health Imaging, Inc., which the Court terminated on August 8, 2004 (Doc. 63). The Court noted, however, that GEMS' requests for sanctions could be re-filed if discovery abuses continued, which appears to be the case with respect to Dr. Uwaydah. GEMS has incorporated by reference its November 11, 2003 motion (Doc. 53), which the Court considers in addition to the pending Motion for Sanctions (Doc. 65).

that the Court enter default judgment against Dr. Uwaydah, or, in the alternative, preclude him from introducing testimony contrary to the facts as set forth by GEMS.

For the reasons outlined below, and pursuant to Rule 37(b)(2)(B) and (d), GEMS' Motion for Sanctions is **GRANTED**. As its sanction, the Court hereby **ORDERS** that Dr. Uwaydah is prohibited from introducing any testimony contrary to the facts set forth by GEMS.

## I.    FACTUAL BACKGROUND

On September 19, 2002, GEMS filed this action against Prometheus Health Imaging Inc. ("Prometheus"), Dr. Uwaydah, and Dr. Ernest Camponovo to recover funds released under a letter of credit for the express purpose of paying for a CT Scanner that GEMS delivered to Prometheus's business partner, Al-Banader International Group ("ABIG").[2] At the time of the transaction, Dr. Uwaydah served as President, and Dr. Camponovo as Chief Operating Officer, of Prometheus. At the start of this case, both Prometheus and Dr. Uwaydah were represented by the law firm of Frantz Ward LLP ("Frantz Ward").

On October 14, 2002, Prometheus filed a Motion to Dismiss, which this Court denied on May 15, 2003. On January 13, 2003, Dr. Uwaydah answered GEMS' Complaint. One day later, he filed for bankruptcy in Los Angeles, California. *See* Doc. 38.

On January 22, 2003, this Court held a Case Management Conference ("CMC"). At the CMC, Frantz Ward did not disclose that Dr. Uwaydah had filed for bankruptcy.[3] The Frantz Ward attorney also was unable to provide the Court with essential information pertaining to the case – specifically, the disposition

---

[2]   On December 1, 2004, GEMS dismissed its claims against Dr. Camponovo pursuant to Fed. R. Civ. P. 41(a)(1)(ii). *See* Doc. 67.

[3]   It is evident from the record that Frantz Ward was not aware of Dr. Uwaydah's bankruptcy filing. *See* Docs. 27 and 29.

of the funds released to Prometheus under the letter of credit. The Court then ordered that the Defendants' Rule 26 disclosures include documents showing the transfer, and/or location of, the monies released under the letter of credit, in addition to the names of any individuals with this knowledge. *See* Doc. 27.[4]

On February 11, 2003, counsel from Frantz Ward filed a Motion to Withdraw as Counsel for both Dr. Uwaydah and Prometheus. *See* Doc. 29. As grounds for its motion, Frantz Ward cited "communication breakdowns" and "lack of assistance" from its clients. Subsequent to Frantz Ward's withdrawal, no new counsel immediately entered an appearance for either Defendant. In March and April of 2003, GEMS sought certain non-privileged documents directly from Frantz Ward because neither Dr. Uwaydah, nor Prometheus, had obtained new counsel with which GEMS could deal. On April 30, 2003, this Court granted GEMS' Motion to Compel Discovery from Frantz Ward.

On May 16, 2003, Dr. Uwaydah finally filed a *pro se* Notice of Filing Bankruptcy (Doc. 38), nearly five months after the fact. On June 11, 2003, therefore, this Court stayed future proceedings against Dr. Uwaydah, but indicated that the case could be reopened upon written motion justifying relief from the stay, or upon closure or dismissal of the bankruptcy case. On July 17, 2003, Dr. Uwaydah's bankruptcy counsel and GEMS agreed to lift the automatic stay, thus allowing proceedings to continue here. *See* Doc. 53.

On June 5, 2003, Mr. Gregory Gordillo entered an appearance for Prometheus. On July 1, 2003, Prometheus filed an Answer and Counterclaim. *See* Doc. 44. At this time, counsel for Prometheus began assuring GEMS that Prometheus would begin producing documents responsive to this Court's January 29,

---

[4] Though the Case Management Conference occurred on January 2, 2003, the resulting Order confirming the decisions made at that Conference was issued on January 29, 2003. Accordingly, it is referred to herein as the "January 29, 2003 Order."

3

2003 Order compelling discovery. In October 2003, Prometheus sent GEMS documents which it claimed were responsive to the Court's January 29, 2003 Order. GEMS contended, however, that the documents were insufficient. At that time, GEMS had received nothing from Dr. Uwaydah. *See* Doc. 53.

During an October 24, 2003 Status Conference, this Court reaffirmed its prior order, and gave both Dr. Uwaydah and Prometheus a final opportunity to comply with the Court's prior January 29, 2003 Order. *See* Doc. 51. The Court's new order specifically required the Defendants to produce information regarding the identity of Prometheus' shareholders, the identity of Prometheus' officers (including the times in which they held such offices), and the present location of all monies released under the letter of credit at issue in this case. While Prometheus provided sufficient information as to the identity of its shareholders and officers, it continued to avoid disclosing the location of money released under the letter of credit.[5] Again, Dr. Uwaydah did not submit *any* documents, or other discovery materials, to GEMS pursuant to the Court's second order.

GEMS attempted to resolve this matter without seeking this Court's intervention. On November 7, 2003, GEMS faxed a letter to Prometheus' counsel and Jaime Serrat (who, by this time, had entered an appearance for Dr. Uwaydah) demanding total compliance by November 10, 2003 with this Court's Orders. *See* Doc. 53, Ex. A. Counsel for Prometheus responded by providing an affidavit from Rania Mardini, who is currently the sole director and board member of Prometheus. The affidavit failed to adequately answer

---

[5] Specifically, Prometheus could not, or would not, account for 1) $93,000 released from the letter of credit in September of 2001, 2) $800,000 released under the letter of credit in November 2001, or 3) the theory under which Prometheus' officials authorized the transfer of the $800,000 from the letter of credit to a Mr. Kassir in July 2002, aside from asserting that the payment was in connection with the potential establishment of diagnostic centers in the Middle East, which never were established. Doc. 53, p. 7-8.

GEMS' question as to the specific location of all monies released under the letter of credit, however.[6] Dr. Uwaydah's counsel also sent documents to GEMS. However, the documents did <u>not include any new information</u> responsive to the Court's October 24, 2003 Order. In response to Defendants' inaction and/or inadequate responses, GEMS filed a *Motion for Contempt and a Renewed Motion for Sanctions*. *See* Doc. 53. On January 8, 2004, after a hearing at which Defendants <u>yet again</u> agreed to provide the records requested, and GEMS indicated a further desire to work with Defendants determine just where the letter of credit monies had gone, this Court denied the motions, but indicated that they could be revived if Defendants' discovery abuses continued.

At a May 20, 2004 Status Conference, the Court ordered that domestic depositions be completed by July 20, 2004. In an attempt to schedule Dr. Uwaydah's deposition, which would take place in Los Angeles, California, GEMS contacted counsel for Dr. Uwaydah and Prometheus on June 1, 2004 and proposed five different dates.

On June 16, 2004, having received no response from either Defendant, GEMS requested that counsel for Dr. Uwaydah and Prometheus provide by June 21, 2004 a range of dates for Dr. Uwaydah's deposition. Doc. 65, Ex. B. On July 8, 2004, again having received no response from either Defendant, GEMS noticed

---

[6] The affidavit indicated that an additional $200,000 from the letter of credit was received by Prometheus for the down payment for the equipment to GEMS, and that the former $93,000 was used by Prometheus to pay "other business expenses." Doc. 53, Ex. A. Despite the fact that according to Prometheus' own records, which show Mardini was not an officer or director of Prometheus prior to December 2001, Mardini contends that Prometheus was unaware of any terms of the letter of credit requiring that the monies issued pursuant to the letter be paid directly to GEMS. To the contrary, Dr. Uwaydah and Mr. Saponaro, Prometheus' corporate secretary and counsel, had previously sent correspondence to GEMS stating that the monies in the letter of credit were designated for payment to GEMS. Doc. 53, Exs. B and C.

Dr. Uwaydah's deposition for July 21, 2004. Doc. 65, Ex. D. On July 13, 2004, after trying unsuccessfully to reach Dr. Uwaydah's counsel by telephone, GEMS sent an e-mail to Defendants in an effort to confirm Dr. Uwaydah's availability on July 21, 2004. *See* Doc. 65, Ex. A. Prometheus' counsel responded that he was not available on July 21, 2004. Prometheus' counsel did provide alternative dates, however, and requested that Dr. Uwaydah's counsel address Dr. Uwaydah's availability.

After receiving this correspondence <u>from Prometheus' counsel</u>, Dr. Uwaydah's counsel finally contacted GEMS and requested that Dr. Uwaydah's deposition take place in <u>late August</u>, due to counsel's involvement in an ongoing criminal matter. GEMS agreed to set a date in late August. By September 3, 2004, however, Dr. Uwaydah's counsel still had not contacted GEMS with dates for the deposition.[7] GEMS attempted to contact Dr. Uwaydah's counsel, but received no response prior to filing the present motion.

Accordingly, GEMS filed this Motion for Sanctions on November 22, 2004 based on Dr. Uwaydah's repeated abuse of the discovery process – most recently, his failure to appear for his properly noticed deposition, or otherwise attempt to reschedule the same. Specifically, GEMS requests that the Court enter default judgment against Dr. Uwaydah, or, in the alternative, preclude him from introducing any testimony contrary to the facts as set forth by GEMS.

In response, Dr. Uwaydah's counsel argues that he believed that the deposition was to be set for the upcoming "winter months," and Dr. Uwaydah was under no pending obligation because GEMS had not issued a new deposition notice. GEMS responds, however, that a new notice was unnecessary, as GEMS had not withdrawn the original notice, which Dr. Uwahdah simply ignored. GEMS also asserts that after reading Dr.

---

[7] GEMS asserts that it learned from a newspaper article that Dr. Uwaydah's counsel's trial had ended prior to September 3, 2004. Doc. 65, p. 4.

6

Uwaydah's counsel's claim that he believed the deposition was to occur during the "winter months," counsel for GEMS contacted Dr. Uwaydah's counsel to discuss that issue. By affidavit, GEMS' counsel asserts that Dr. Uwaydah's counsel later admitted that he had not discussed the alleged "winter months postponement" with GEMS' counsel, but only with Prometheus' counsel. *See* Doc. 69, Ex. 1 at ¶ 4.

## II.  DISCUSSION

### A.  Legal Standard.

A federal district court may sanction parties who fail to comply with discovery orders. Fed. R. Civ. P. 37(d) (governing sanctions for one's failure to make or cooperate in discovery); *Bank One of Cleveland v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990); *see also Jackson, et. al v. Nissan Motor Co., Ltd.*, No. 88-6132, 1989 U.S. App. LEXIS 16348, at *9 (6th Cir., October 30, 1989). In pertinent part, Rule 37 provides that if a party fails:

> to appear before the officer who is to take the deposition, after being served with proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure that are just.

Fed. R. Civ. P. 37(b)(2) (emphasis added). "Just" actions include, but are not limited to: 1) entering default judgement against the offending party; 2) prohibiting the offending party from supporting or opposing designated claims or defenses; and 3) prohibiting the disobedient party from introducing designated matters into evidence. Fed. R. Civ. P. 37(d) (incorporating sanctions under Rule 37(b)(2)(B) and (C)); *see also Bank One of Cleveland*, 916 F.2d at 1073.

### B.  Sanctions Warranted.

Dr. Uwaydah repeatedly abused the discovery process and completely opposed the cooperative spirit intended by the Rules. He has repeatedly failed to adequately respond to GEMS' requests and this Court's

7

orders, which, in and of itself, warrants sanctions. Most recently, Dr. Uwaydah has continued his delay tactics by avoiding his properly noticed deposition; and, thereafter, he failed to make a good faith effort to reschedule the deposition or otherwise make himself available. Dr. Uwaydah's counsel's arguments in response to GEMS' motion, especially in light of this case's history, and this Court's repeated willingness to allow counsel an opportunity to convince his client to cooperate, are unavailing. This Court has patiently accommodated Dr. Uwaydah's interchangeable excuses for his complete lack of cooperation. Dr. Uwaydah has shown this Court his lack of respect for the judicial process and has demonstrated he will not remedy his actions in the future.

### III. CONCLUSION

For the forgoing reasons, GEMS' Motion for Sanctions is **GRANTED in part. Dr. Uwaydah is hereby prohibited from introducing any testimony contrary to the facts set forth by GEMS**.

**IT IS SO ORDERED.**

                                    **s/Kathleen M. O'Malley**
                                    **KATHLEEN McDONALD O'MALLEY**
                                    **UNITED STATES DISTRICT JUDGE**

**Dated: May 2, 2005**